JACKSON v. COLE.

Opinion delivered December 20, 1920.

1. TENANCY IN COMMON—ADVERSE POSSESSION.—A conveyance by a cotenant of the entire estate to a stranger gives color of title; if possession is taken thereunder, and the grantee claims the whole, his possession is adverse to the other tenants in common, and he acquires title by occupancy for the statutory period, except as to those under disability.

2. LIMITATION OF ACTIONS—PERSON UNDER DISABILITY.—Under Kirby's Digest, § 5056, adverse possession of land will bar recovery by an infant only when he fails to sue within three years after attaining his majority.

Appeal from Greene Circuit Court, First Division; R. H. Dudley, Judge; reversed in part.

*Huddleston, Fuhr & Futrell,* for appellants.

1. The answer to the complaint raises two issues: (1) that there was an exchange of lands by Isaiah Jackson for the lands in question; (2) that plaintiffs are barred by adverse possession. The first question was properly submitted to a jury; but the second issue was not properly submitted, nor in fact submitted at all.

2. Instruction No. 4 was in substance a peremptory instruction, and it was error. It does not come within the definition of adverse possession. In order to constitute adverse possession, it must be shown that it was actual, hostile, open and exclusive, and continuous for the full period prescribed by the statute. 65 Ark. 426; 43 *Id.* 486; 27 *Id.* 527. The mere nondemand and nonpayment of rent are not sufficient to make the holding adverse. 57 Md. 612. See, also, 14 S. W. 361; 7 Mich. 181. The possession of one cotenant is the possession of all, and one cotenant is trustee for all other cotenants. 221 S. W. 458; 68 Ark. 542; 49 *Id.* 242.

3. The instruction does not even require that occupants should have been claiming in their own right and fails to submit the question of ouster or disclaimer and notice. An actual termination of the relation of landlord and tenant must take place and brought home to the landlord or cotenant. 89 Am. St. Rep. 85. Our Arkansas cases support the principles announced. 15 Ark. 102; 27 *Id.* 527; 77 *Id.* 570; 114 *Id.* 376. See, also, 117 Ark. 418; 125 *Id.* 181; 102 *Id.* 679; 99 *Id.* 84, 446.

*Block & Kirsch,* for appellees.

1. There was no error in giving instruction No. 4. 1 R. C. L. 706 and cases cited; 36 Am. Dec. 178; 5 Am. Dec. 136; 53 L. R. A. 699. The acts required to constitute hostility were correctly given in the instruction. The instruction correctly states the law. 1 R. C. L. 704; 136 Am. St. Rep. 1016.

2. Irrespective of the plea of limitations, the undisputed evidence shows that Isaiah Jackson, the ancestor, became the owner of these lands as the result of a trade

between himself and J. R. Jackson and R. Jackson, and a directed verdict for appellees would have been entirely proper.

SMITH, J.  Suits in ejectment were brought by appellants to recover an undivided half interest in a forty-acre tract of land and an eighty-acre tract of land. The cases were consolidated in the court below, and are here on one appeal. The plaintiffs in the suits are the heirs at law of J. R. Jackson, who died August 5, 1881; and the defendants are the daughters of Isaiah Jackson, who died in November, 1909. J. R. and Isaiah were brothers, as was also R. Jackson, who died in 1917.

About 1869 Isaiah Jackson moved on to certain lands, which the witnesses referred to as the railroad lands, from the fact that the title thereto was acquired from a railroad company. These railroad lands adjoin the land in suit, and possession of both tracts was taken by Isaiah Jackson at about the same time. The lands in controversy were not entered from the State until 1874, in which year J. R. and R. Jackson obtained a patent from the State. On January 2, 1897, R. Jackson executed a warranty deed to Isaiah Jackson for the land in controversy. The deed purported to convey the whole title. On July 31, 1906, Isaiah Jackson conveyed to his daughter, Alice, forty acres of the land by warranty deed, which declared it the intention of the grantor "to grant to the said Alice Cole a life-estate, with remainder over to her heirs." A similar deed was made on the same day to Nellie Rowe for the eighty-acre tract. The plaintiff, Jennie Penny, was born September 26, 1862, and was married to John Penny February 3, 1879, who died April 7, 1916. The plaintiffs, Carroll and Mildred Huff, were children of Lelia Huff, daughter of J. R. Jackson. They are twins and were born July 16, 1897. Their mother died January 14, 1899. The suit was begun in June, 1919, and resulted in a verdict and judgment for the defendants

Two defenses were interposed. One was that Isaiah Jackson exchanged the lands in suit with his brother for other lands which he owned. The second was that the title had been acquired by limitation. It is conceded that the question of the exchange of lands was properly submitted to the jury, and it need not, therefore, be further considered. The verdict of the jury on this question would have been decisive of the case, had the case been submitted on that question alone; but over the objection of the plaintiffs the court gave an instruction numbered 4, which reads as follows: "If you find and believe from the evidence that Isaiah Jackson, the ancestor of the defendant, went into possession of the lands in question in the year 1869, or thereabout, continued to reside upon said lands until the time of his death, made improvements thereon, by way of building houses, outhouses, clearing and fencing the lands, and any other improvements, and paid the taxes thereon, and in the year 1906 conveyed a portion of the lands to his daughter, Mrs. Cole, and the remainder to his daughter, Mrs. Rowe, who occupied the lands after the death of their father as their homestead, and they, or their husbands for them, have paid the taxes on said lands continuously since receiving their deeds to the lands, and made substantial improvements upon the lands, and these facts were known to plaintiffs at all times, and they were aware of what was being done by Mrs. Cole and Mrs. Rowe, and asserted no claim to any interest in the lands, then you will find for the defendants."

The correctness of this instruction presents the real question in the case, as it is contended by appellants, and virtually admitted by appellees, that it directed a verdict for the defendants, the facts there hypothetically stated being undisputed.

The insistence is that Isaiah Jackson's entry was permissive, and his subsequent holding was as tenant at will until 1897, when, by the conveyance to him from R. Jackson, he became a tenant in common with the heirs of J.

R. Jackson, and that thereafter his holding never became adverse to these heirs—as cotenants—and that if there was any question on this score it was one of fact, which should have been submitted to the jury.

Leaving out of account the question of the exchange of the lands—for the purpose of this discussion—it may be admitted that R. Jackson had the paper title to only an undivided half interest in the lands he conveyed, but he undertook to convey the whole title, and the conveyance was by warranty deed. Three years later Isaiah Jackson conveyed to the defendants the whole title. That conveyance was by warranty deed, and the estate conveyed— a life-estate, with remainder over—clearly indicates that grantor and grantee intended to pass, and receive, the whole title.

The instruction complained of required that there had been actual and continuous possession for a period of fifty years (1869-1919); that a conveyance had been made to the defendants thirteen years before the institution of the suit; that these grantees had occupied the lands continuously since as their homestead, and had improved the same, and paid the taxes thereon; and that all these facts were known to the plaintiffs, during all of which time they asserted no claim or interest in the land. The testimony shows that these things were true, and that the defendants were 43 and 41 years old, respectively, and both were born on this farm, and had lived there practically all their lives, and from their earliest recollection their father had always owned, and claimed to own, the land, and that they had owned, and claimed, their respective portions from the date of their father's deed. Under these circumstances it was not error to give the instruction set out above, except as to the plaintiff, Carrol Huff, for the reason hereinafter stated.

The excellent briefs in the case collect many of our cases dealing with the conditions under which one tenant in common may hold adversely against his cotenant and

acquire the title by adverse possession. We will not review those cases, as the law of the subject is well defined.

In the case of *Parsons* v. *Sharpe,* 102 Ark. 615, we said: "The rule sustained by the overwhelming weight of authority with reference to conveyances by one or more cotenants to a stranger, and the character of possession taken thereunder, is correctly stated as follows: 'The conveyance by one cotenant of the entire estate gives color of title; and if possession is taken, and the grantee claims title to the whole, it amounts to an ouster of the cotenants, and the possession of the grantee is adverse to them.' 1 Am. & Eng. Enc. of Law (2 ed.), p. 806, and numerous authorities there cited.

"That rule was recognized by this court in *Brown* v. *Bocquin,* 57 Ark. 97.

"On the other hand, the principle is well settled that where a conveyance is executed to a stranger by one tenant in common, purporting to convey only his undivided interest, he becomes a tenant in common with the other tenant (17 Am. & Eng. Enc. of Law (2 ed.), p. 661); and, in order to constitute an ouster, 'the tenant out of possession must have actual notice of the adverse holding or the hostile character of the possession must be so openly manifest that notice on his part will be presumed.' 1 Am. & Eng. Enc. of Law (2 ed.), p. 805."

The cases appearing in this quotation were cited and approved in the later case of *Wilson* v. *Storthz,* 117 Ark. 14. See, also, *Brashear* v. *Taylor,* 109 Ark. 281; *McKneely* v. *Terry,* 61 Ark. 527; *Cocks* v. *Simmons,* 55 Ark. 104; *Brewer* v. *Keeler,* 42 Ark. 289.

It is the law, as was stated in the case of *Wilson* v. *Storthz, supra,* that one entering upon the possession of land, under a deed of conveyance to him is presumed to occupy, and intends to claim, only the interest named in his conveyance. But Isaiah Jackson received a deed to the whole title, and he conveyed to these defendants the whole title, and the undisputed testimony is that these defendants occupied the land, and claimed the title, under

these deeds for more than seven years before the institution of this suit.

The subject under discussion is one which has frequently received attention in the annotated cases, many of which are cited in the notes to section 48 of the article on Cotenancy in 7 R. C. L., pages 854-855. Among these are *Lloyd* v. *Mills,* 32 L. R. A. (N. S.) 702; *Allen* v. *Morris,* 29 A. & E. Ann. Cas. 1310.

In the text of the section of R. C. L. above mentioned the law is stated as follows: "*Entry under conveyance of property by one cotenant.* A conveyance to a stranger to the title, by one cotenant, by an instrument purporting to pass the entire title in severalty, and not merely such cotenant's individual interest, followed by an entry into actual, open and exclusive possession by such a stranger, under claim of ownership in severalty, amounts to a disseisin of the other cotenants, which, if continued for the statutory period, will ripen into good title by adverse possession. * * * In considering this question the familiar principle is recalled that when one enters upon land, he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of his interest." The author continues: "Therefore, in such a case, a sale of the whole tract is, in effect, such assertion of claim to the whole as is quite incompatible with an admission that the other tenant in common has any right whatever; and it follows that acts of ownership on the part of such a grantee must necessarily be adverse to any other part owner, even though, in such a case, the latter had no actual notice of the adverse character of the possession." It is stated in this same section that the authorities are conflicting on this last proposition. But it is not essential that we approve the law as thus stated to affirm the action of the court in giving instruction numbered 4, because that instruction required a finding that the plaintiffs had knowledge of the facts there hypothetically stated.

In the section quoted from it is further stated that the presumption that a grantee in possession, under a conveyance of the whole title by one tenant in common, holds adversely to the other cotenant may be overcome by words, acts and circumstances showing that at the time or subsequent to his taking possession the grantee acknowledged the rights of his cotenant. But here there is an entire absence of such testimony.

In Freeman on Cotenancy (2 ed.), § 197, the law is stated as follows: *"As Color of Title:* A conveyance by one cotenant, purporting to convey an estate in severalty, can not operate to the prejudice of another. This is true only so far as the immediate effect of such conveyance as a transfer of title is concerned. It does not follow that no rights can grow out of it, nor that it is, even as against the other cotenants, mere waste paper for all purposes. Such a conveyance constitutes color of title. The entry of the grantee made under the deed, and claiming an interest coextensive with that with which the deed purports to deal, is an entry under color of title. The cotenants are therefore bound to take notice of the deed and of the entry made under it, and to take such steps as may be required to enforce a recognition of their legal rights. Should they fail to do so within the time prescribed by the statute of limitations, their rights will be no longer susceptible of enforcement; and their interests, by operation of that statute, will vest in the party in possession under the deed."

In the case of *Newmarket* v. *Pendergrast,* 24 N. H. 54, one of the head notes is as follows: "If a tenant in common, being in possession of the land, conveys it with a covenant of warranty against all claims and demands, possession under the deed will be adverse to the title of the other tenants in common. In such case, if the fact is found that the possession of the grantee is under his deed, it is a legal conclusion that his possession is adverse and the question is not for the jury."

What we have said is conclusive as to the claim of the plaintiff, A. D. Jackson, who has been under no disability.

It is also conclusive as to his sister and coplaintiff, Mrs. Penny. It is true Mrs. Penny was a married woman from February, 1879, until April 7, 1916, but she became discovert on the last named date, through the death of her husband, and more than three years expired thereafter before the institution of this suit. Section 5056, Kirby's Digest.

This also disposes of the claim of Mildred Huff, who was born July 16, 1897, and, therefore, became eighteen years of age on July 16, 1915, a period of more than three years before the institution of this suit. *Brake* v. *Sides,* 95 Ark. 74; *Shapard* v. *Mixon,* 122 Ark. 530.

But the instruction was not a proper one as to Carrol Huff, who did not become twenty-one years of age until July 16, 1918, which was less than a year before the institution of this suit.

The judgment of the court must, therefore, be reversed as to Carrol Huff, as the statute of limitations did not run against him on account of his infancy, and the suit was brought within three years of the time when he became of full age.

The judgment of the court will therefore be reversed, and upon the remand of the cause it will be submitted to the jury as to Carrol Huff upon the other issues involved in the case, towit, that of the exchange of the lands and that of the acquisition of the title by Isaiah Jackson himself by his own possession.

As to all other appellants the judgment is affirmed.

McCULLOCH, C. J., (dissenting). The evidence warranted the finding that the possession of Isaiah Jackson began permissively under his brothers, J. R. Jackson and Richard Jackson, and that the character of that possession continued until the time of the conveyance to him by J. R. Jackson. Isaiah was not in the attitude of a stranger to the original owners, J. R. and R. Jackson,

for he occupied the land as the tenant by sufferance of the two owners, and his acceptance of the conveyance from one of them made him a tenant in common with the other. The character of the possession of appellees under the conveyance from their father, Isaiah Jackson, was not different. They resided on the place—were reared there—and there was no visible change of possession. So the possession, as shown by the evidence, was not necessarily hostile, and the issue should have been submitted to the jury. Instruction number 4 took that question away from the jury by declaring as a matter of law that the facts recited constituted adverse possession. When possession begins permissively, actual knowledge of adverse holding must be brought home to the owner, either directly or by notorious acts of unequivocal character. *Singer* v. *Naron*, 99 Ark. 446.

My opinion, therefore, is that the court erred in giving the instruction referred to.