## BEATTIE *v.* McKINNEY.

## Opinion delivered June 25, 1923.

1. PARTITION—POSSESSION OF COTENANT.—The rule that partition cannot be had of lands held adversely does not apply in a suit by a tenant in common against a cotenant.

2. TRIAL—WAIVER OF OBJECTION TO JURISDICTION OF CHANCERY.— Where an action at law for partition was by agreement transferred to equity, and the jurisdiction of the court was not questioned, a motion to dismiss for lack of jurisdiction in equity was properly refused.

3. PARTITION—ADVERSE POSSESSION OF COTENANT—BURDEN OF PROOF. —In a suit by an heir against a co-heir for partition of land descended from a common ancestor, defendant's claim of ownership of the entire estate by a parol gift from such ancestor was an affirmative defense as to which he had the burden of proof by clear and satisfactory evidence.

4. TENANCY IN COMMON—ADVERSE POSSESSION.—The fact that a tenant in common of land listed it as his own and paid the taxes on it, sold timber, and caused timber to be deadened preparatory to cultivation, and built houses which he rented to tenants, did not constitute adverse possession as against his cotenant, in the absence of any notice to the latter of the hostile character of the possession.

5. EQUITY—LACHES.—The doctrine of laches is not applicable as against one claiming the legal title.

Appeal from Crittenden Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*C. W. Norton,* for appellant.

The court erred in not dismissing suit for want of jurisdiction. It was for partition and the lands claimed to be held adversely. Great preponderance of the testimony shows a verbal gift of the lands to her son, Geo. A. C. Beattie, by the mother, and his assuming possession thereof in 1886, prior to execution of her will in 1887, and the chancellor's finding is clearly against the preponderance of the testimony. Appellants have had possession of and held adversely the lands since 1892. 30 Ark. 598; 49 Ark. 266; 2 C. J. 67; 1 R. C. L. Adverse Possession, §§ 8 and 10; 99 N. W. (Wis.) 1027; 1 Am. & Eng. Enc. of Law, 827; 40 Ark. 243; 30 Ark. 655; 92 Ark. 321. Appellee's claim is barred by laches.

*L. P. Berry* and *R. V. Wheeler,* for appellee.

The cause was transferred to equity and defenses cognizable in equity were set up, and the court had jurisdiction to dispose of all matters. 99 Ark. 84; 137 S. W. 552; 49 Ark. 75, 4 S. W. 167. The burden to show a parol gift of the lands to appellant was on him, and he failed to discharge it by the required clear and satisfactory evidence. 63 Ark. 100, 37 S. W. 302. The lands were owned in common, and appellant failed to show an adverse holding as against appellee cotenant. His possession was fitful and broken, lacked continuity, and the cases cited are not applicable to the case made here.

SMITH, J. Appellee was the plaintiff below, and for her cause of action alleged that she and the defendant were tenants in common of a tract of land there described. She alleged that she and her brother, G. A. C. Beattie, were the only children and heirs at law of their father, Madison Beattie, and their mother, Martha Beattie, and that her brother, G. A. C. Beattie, died intestate, leaving his children, the defendants, as his sole heirs at law. She alleged her ownership of an undivided half interest in said lands, and that the defendants owned the other half, and she prayed that partition be made.

Defendants denied that plaintiff owned any interest in the land, and alleged the facts to be that Madison Beattie and his wife, Martha, were the owners of said lands as tenants by the entirety; that Madison Beattie died in 1885, and his wife took the whole title as surviving tenant, and that on the............day of.........................., 189........., the said Martha Beattie made a verbal gift of said lands to her son, G. A. C. Beattie, and placed him in possession thereof, and that he, claiming under such gift, and in reliance on it, entered upon said lands, cleared them, and made valuable improvements thereon. That plaintiff was advised of the gift, and permitted her brother to assume the burden of taxes and to improve the same, and defendants pleaded both limitations and laches.

Mrs. McKinney, the appellee, testified that she knew her brother was paying the taxes in his own name, and that he had sold some timber, and had cleared a portion of the land, but she assumed he was doing so for their joint benefit, and in a conversation with her brother he told her that he knew she owned an undivided half interest in the land, and that if she would pay him one-half the cost of the improvements and the taxes they would divide the land, and that she intended to make this payment, but did not press the matter, as she had confidence in her brother, and that one of the conversations with him occurred in March or April, 1918, and later he called at her home in Virginia, where they both resided, and told her that he hoped she did not think he would try to hold individually property which they had inherited from their mother. She further testified that her brother's health failed, and he died before the matter was adjusted, and that after the death of her, brother she discussed the matter with her nephew, the defendant, W. M. Beattie, who had charge of the lands of his father, and he told her the equities would be adjusted and the land divided, but he failed to take any action in the matter, and finally denied that she owned any interest in the land, whereupon she brought this suit.

Mrs. McKinney's son, Chas. F. McKinney, a man thirty-six years old, substantially corroborated his mother.

W. M. Beattie testified that he removed to Crittenden County, where the land is situated, in 1906, and had charge of his father's Arkansas lands for sixteen years. That his grandfather died in 1885, and his grandmother in 1897, and his father in 1919. That his grandfather disposed of his estate by his will and devised to his son, G. A. C. Beattie, his lands in Arkansas, and after his grandfather's death his grandmother gave the land in litigation to his father, and directed him to put the land on his tax list, and that his father did so, and commenced

paying the taxes in the lifetime of his mother, and continued to do so until his death. According to this witness, Mrs. McKinney admitted to him that she had no interest in the lands, but she made a claim to an interest in them because her children insisted that she do so. W. M. Beattie was substantially corroborated by his brother and his sister.

Much testimony was taken on the extent and value of the improvements made by Beattie, and the cause was referred to a master to state an account, but, as no objection is now urged to the master's finding, we make no statement of the facts on those issues.

The decree recites that "at the conclusion of the reading of the testimony the defendants moved the court to dismiss the cause for the want of jurisdiction, which motion was by the court overruled." The ground of the motion was that the suit was one for partition, whereas the possession of the defendants was adverse to the plaintiff.

Except on the question of taxes, etc., the finding was in favor of the plaintiff, and the defendants have appealed.

For the reversal of the judgment it is first insisted that the court was without jurisdiction to order partition of the land, for the reason that it was adversely held by the defendants at the time of the institution of the suit for partition.

The suit was originally brought at law, and the defendants demurred upon the ground that "it is shown in the complaint that defendants were in actual possession." The court sustained the demurrer, and granted time to the plaintiff to amend her complaint, and the cause was then, by agreement of the parties, transferred to the chancery court.

It is, of course, well settled that partition cannot be had of lands which are held adversely. *Hill* v. *Cherokee Construction Co.*, 99 Ark. 84, and cases there cited. But we think that doctrine has no application here. The

ownership of the land by Martha Beattie is admitted, and the plaintiff and her brother were her only heirs. Presumptively, the brother and sister each inherited an undivided half interest from their mother; there was no question about that. The question in this case is whether one of the cotenants acquired the whole title. The answer alleged this to be a fact, and this was the question developed by the testimony and tried by the court. The answer alleged parol gift, among other defenses, and also the defense of laches, and this latter defense is here strongly insisted upon. The plaintiff sought to recover upon her legal title; the defendants resisted recovery by denying plaintiff's title, and by setting up, as one of their defenses, a defense cognizable only in equity, and the jurisdiction of the court does not appear to have been questioned until the case was submitted to the court. There was no motion that the cause be transferred to law, which should have been done, had that request been made; but the motion was that the cause be dismissed. *Sledge-Norfleet Co.* v. *Matkins,* 154 Ark. 509. Under these circumstances we think the motion to dismiss was properly overruled, and that the court properly proceeded to try the issues raised by the pleadings and the testimony, which were the question of the parol gift and that of limitations and laches.

The next question is whether G. A. C. Beattie acquired title by a parol gift from his mother. We have set out the substance of the testimony of respective parties on that issue, and it appears to be of about equal weight. Counsel for appellants say that, the testimony being of about equal weight, the defendants should prevail, as the burden of proof is on the plaintiff. But the burden of proof is not upon the plaintiff to show there was no gift to G. A. C. Beattie by his mother. This was an affirmative defense, and the burden of establishing it was upon the party who pleaded it, and this burden could not be discharged by a mere preponderance of the evidence. The existence of a parol gift of land is one of

those things which cannot be established by a bare preponderance of the evidence. It is required that such a gift be established by evidence that is clear and satisfactory, and the evidence in this case does not meet that requirement. *Meigs* v. *Morris,* 63 Ark. 100; *Young* v. *Crawford,* 82 Ark. 33.

Did the defendants acquire the title by adverse possession, and is the plaintiff barred by laches? The testimony shows that G. A. C. Beattie placed the land on his separate tax lists and paid the taxes in his own name until this litigation was begun. It also appears that he sold the timber thereon in 1909. It does not appear when the timber was removed, but in 1911 G. A. C. Beattie caused the timber to be deadened as a preparatory step to cultivation of the land. There was no other act of possession by G. A. C. Beattie until 1916, at which time he built some houses on the land, and gave leave to several negro tenants, who entered upon the land and proceeded to clear and cultivate it. This suit was brought in October, 1920.

It will be remembered that G. A. C. Beattie and Mrs. McKinney were tenants in common, and, as such, they each had the right to the possession of the land, and there is a presumption that the possession of one cotenant is in subordination to the cotenancy. One tenant in common might acquire the title of his cotenant by adverse possession, but to do so it is not sufficient that he occupy the land exclusively, and that he intends his possession to be adverse. The ousted tenant must have notice that the holding is adverse, or the hostile character of the possession must be so openly manifest that notice will be imputed. *Jackson* v. *Cole,* 146 Ark. 565, and cases cited.

Having concluded that G. A. C. Beattie did not acquire the title by a parol gift from his mother, it remains to be determined, under the tests stated, whether title was acquired by adverse possession. It is shown that Madison Beattie devised his Arkansas lands to his

son, G. A. C. Beattie, and he gave to his daughter, Mrs. McKinney, property located elsewhere. It also appears that Madison Beattie and his wife owned the land in litigation as tenants by the entirety, and that the wife survived the husband, and it is argued that the gift from Mrs. Beattie to her son merely effectuated the intention of her husband to give the son the Arkansas lands which his father had owned. But this is a mere deduction from the circumstances stated, there being no positive testimony that Mrs. Beattie had any such intentions, except the testimony of W. M. Beattie that his father had told him that the land was a gift from his mother, which testimony was, of course, incompetent. The fact is that Mrs. Beattie acquired the title to this land as surviving tenant, and owned it as completely as she did a large body of other lands which she owned in Crittenden County. Mrs. Beattie died testate, and by her will divided her other lands equally between her son and her daughter. This will was executed in 1887, and Mrs. Beattie died in 1897, but she permitted both her son and her daughter to assume control of the lands devised to them respectively, and they thereafter paid taxes individually on separate tax lists. They had the same agent in this State, who paid taxes for them both, but their lists were separate, and the lands in question never appeared on Mrs. McKinney's tax lists.

It is shown that in 1911 G. A. C. Beattie caused the timber to be deadened, but it was not until 1916 that he put tenants in possession to clear and cultivate the land, and during all this time Mrs. McKinney resided in Virginia, as did also her brother, both of whom owned large tracts of land in Crittenden County, and, while she knew he was paying taxes in his individual name, she testified that she did not know he was doing so under a claim of individual ownership. But, as we have said, the presumption is that G. A. C. Beattie's acts of ownership were those of a tenant in common, and we think they were not so inconsistent with that relationship as to charge Mrs.

McKinney with notice that her joint ownership was being disputed prior to 1916.

About seven acres of this land were in cultivation prior to 1909, but, except this seven acres, there was no actual possession prior to 1916, and the finding of the court was that these seven acres were not adversely occupied; or, if so, that notice thereof had not been brought home to appellee, and that the title had not been acquired even to these seven acres.

Appellants insist that the adverse possession should be computed from 1911, when the timber was deadened, and not from 1916, when tenants were put in possession; but we do not think so. If the deadening of the timber be treated as an entry, then the lapse of five years thereafter before the tenants were put on the land must be treated as a break in the continuity of possession. *Scott v. Mills,* 49 Ark. 266; *John Henry Shoe Company v. Williamson,* 64 Ark. 100; *Wagner v. Head,* 94 Ark. 490; *Briggs v. Jones,* 132 Ark. 455.

Upon the question of laches, it may be said that the plaintiff is not seeking equitable relief, but only to enforce a legal title, and the doctrine of laches does not apply. *Davis v. Neal,* 100 Ark. 399; *McFarlane v. Grober,* 70 Ark. 371; *Rowland v. McGuire,* 67 Ark. 320; *Berg v. Johnson,* 139 Ark. 243.

The decree appears to be correct, and it is affirmed.