GIBBS *v*. PACE.

4-7340

179 S. W. 2d 690

Opinion delivered April 24, 1944.

*Sam Costen,* for appellant.

*James C. Hale* and *John A. Fogleman,* for appellee.

HOLT, J.  April 18, 1942, appellant, W. P. Gibbs, sued appellees to quiet and confirm title in himself to a 160-acre tract of land in Crittenden county. He alleged in his complaint that he acquired title to the land May 29, 1941, by warranty deed from C. H. Neely and wife; that Neely, under whom he claims, acquired title to the land by adverse possession for seven years and more, beginning in 1901, and also by oral gift from Dr. S. J. Knott, his father-in-law, in 1901.

Appellees answered, denying appellant's claim of title, denied that C. H. Neely, through whom appellant claims title, acquired the land in controversy by adverse possession, or by oral gift from Dr. Knott, but alleged the facts to be that Neely and Dr. Knott acquired the land in 1899 as tenants in common; that Neely owned an undivided one-half interest in the tract, and that in 1901 Neely was permitted by Dr. Knott to take possession of the land and to have its use and the income therefrom during his life, Neely being the son-in-law of Dr. Knott, and that Neely's possession was permissive only. Appellees also pleaded the statute of frauds as to the parol gift to Neely, and asked that the land be partitioned.

Upon a trial, the court found that Mrs. Eva Knott had no interest in the land and this appellees concede. The court further found that the remaining appellees were the owners of an undivided one-half interest, subject to an estate of C. H. Neely for life, now owned and held by appellant, Gibbs; that C. H. Neely's possession had not been adverse to appellees or to their father, Dr.

S. J. Knott; that Neely's possession was permissive only, and decreed: "that the deed from C. H. Neely to W. P. Gibbs, dated the twenty-ninth day of May, 1941, . . . in so far as it affects or purports to affect the undivided one-half interest, subject to an estate for the natural life of C. H. Neely, owned by the defendants, Mary Knott Pace, Charlie Miller Knott Thomas and Simon J. Knott, be canceled as a cloud on their title; that the title to the" land in question (described herein) be "quieted and confirmed in the plaintiff, W. P. Gibbs, as to an undivided one-half interest for the natural life of C. H. Neely and is quieted and confirmed in the defendants, Mary Knott Pace, Charlie Miller Knott Thomas and Simon J. Knott, to an undivided one-half interest subject to the estate for the natural life of C. H. Neely owned by W. P. Gibbs," and granted appellees' prayer for partition. From the decree comes this appeal.

From the record it appears that C. H. Neely and Dr. Knott, his father-in-law, acquired the land here in question in 1899, as tenants in common, and the record title has so remained until Neely attempted to convey same to appellant, Gibbs, May 29, 1941. Neely took possession of the land in 1901, cleared some of it, made improvements on it, enjoyed its use, and the income therefrom, down to 1941. He has paid the taxes on the land from 1904. Prior to 1901 Neely and Knott cut and removed the timber and say appellees: "It is undisputed that Neely has been continuously in actual possession of the land since the timber has been cut off by Knott and Neely and that he has cleared and improved this land." Dr. Knott paid the taxes until 1904. He died testate in 1912. Dr. Knott never made any deed to Neely for his, Knott's, undivided one-half interest in the land. In his will, Dr. Knott disposed of approximately 600 acres of land, but made no specific mention of the tract in controversy here. Paragraph 11 of his will provided: "Should there be any other property that has not been disposed of, I direct it be divided at my death equally, to share and share alike, among my three children, Charlie Miller Knott Thomas, Mary L. Knott and Simon Joseph Knott, Jr."

May 16, 1901, Dr. Knott and Neely executed a deed of trust to Goodlett & Co., conveying this land. January 6, 1902, Knott and Neely mortgaged the land to Thomas & Proatz Lumber Company to secure a loan to them, and on June 20, 1904, Knott and Neely again mortgaged this land to the Colonial & United States Mortgage Company, Ltd. December 16, 1940, Neely wrote a letter to appellee, Mrs. Pace, in which he sought to purchase the interest of appellees in the land.

The above facts appear not to be in dispute.

Whether appellant acquired title to the property by virtue of his deed from C. H. Neely obviously depends on Neely's title, or Neely's right to convey. Appellant asserts that Neely had acquired good title to the property, (1) by virtue of an oral gift from Dr. Knott at the time he, Neely, took possession in 1901, and (2) by adverse possession for seven years and more, since he took possession of the property.

This cause is here for trial *de novo*.

"In suits to quiet title plaintiff must rely upon the strength of his own title, and not upon the weakness of his adversary's." *Meyer* v. *Snell,* 89 Ark. 298, Headnote 1, 116 S. W. 208.

In order to establish a parol gift of the land in question, appellant assumed the burden of proof, and this burden could not be discharged by a mere preponderance of the evidence under the law, but the evidence must be clear, unequivocal and satisfactory. "The existence of a parol gift of land is one of those things which cannot be established by a bare preponderance of the evidence. It is required that such a gift be established by evidence that is clear and satisfactory." *Beattie* v. *McKinney,* 160 Ark. 81, 254 S. W. 338; *Beichslich* v. *Beichslich,* 177 Ark. 47, 5 S. W. 2d 739, and in *Akins* v. *Heiden,* 177 Ark. 392, 7 S. W. 2d 15, this court said: "To sum up, it may be said that, though expressed in varying phraseology, the general rule is that evidence necessary to establish a parol gift of land must be clear and unequivocal."

In considering the rules of law as to adverse possession, it must be remembered that at the time Neely entered upon possession of the land in 1901, the record title was in himself and Dr. Knott as tenants in common. "When one enters upon land, he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of his interest." *Patterson* v. *Miller*, 154 Ark. 124, 241 S. W. 875.

"Where possession, in its incipiency, is permissive, the presumption is, in the absence of proof to the contrary, that subsequent possession is permissive also, and such possession will not start the running of the statute of limitations." *Dial* v. *Armstrong*, 195 Ark. 621, Headnote 1, 113 S. W. 2d 503, and in the opinion, it is said: "Where the original entry on another's land was amicable or permissive, possession, regardless of its duration, presumptively continues as it began, in the absence of an explicit disclaimer."

In *Newman* v. *Newman*, 205 Ark. 590, 169 S. W. 2d 667, we said: "In order that adverse possession may ripen into ownership, possession for seven years must have been actual, open, notorious, continuous, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner. . . . The possession of some of the joint tenants, or tenants in common, is the possession of all, and continues to be such until there is some act of ouster sufficient in itself to give notice that those in possession are claiming in hostility to, and not in conformity with the rights of others having interests in the property. *Keith* v. *Wheeler*, 105 Ark. 318, 151 S. W. 284. One in possession is presumed to hold in recognition of the rights of his co-tenants. *Patterson* v. *Miller*, 154 Ark. 124, 241 S. W. 875."

In *Beattie* v. *McKinney*, 160 Ark. 81, 254 S. W. 338, this court said: "One tenant in common might acquire the title of his co-tenant by adverse possession, but to do so it is not sufficient that he occupy the land exclusively, and that he intends his possession to be adverse. The ousted tenant must have notice that the hold-

ing is adverse, or the hostile character of the possession must be so openly manifest that notice will be imputed. *Jackson* v. *Cole,* 146 Ark. 565, 228 S. W. 513, and cases cited.''

And in *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830, this court said: ''The rule is that where the entry is permissive the statute will not begin to run against the legal owner until an adverse holding is declared, and notice of such change is brought to the knowledge of the owner.''

Much evidence was presented by the parties in addition to the undisputed facts set out, *supra.* A great portion of this evidence is conflicting and unsatisfactory due largely to the fact that most of the happenings occurred more than thirty years ago.

While appellant produced testimony tending to show an oral gift of the land to Neely by Dr. Knott in February, 1912, when he (Dr. Knott) wrote his will, there was testimony on the part of appellees of equal, if not greater, weight tending to show that Neely's occupancy and use of the land was permissive, both before and after the death of Dr. Knott, that no oral gift of the land was made to him by Dr. Knott and that his possession and occupancy were not adverse but permissive as the lower court found.

After a review of the entire record, we think appellant has failed to sustain the burden of proof required of him. In weighing the testimony, it is significant that although appellant concedes that Neely had many opportunities to request a deed to the property from Dr. Knott, he never asked for one and never received one. It is also significant that although Neely claims the property was given to him along with possession in 1901, three separate mortgages were executed by him and Dr. Knott on this property over a period from 1901 to 1904, and Dr. Knott paid the taxes on the property up to this latter date. The fact that Neely paid the taxes on the land subsequent to 1904 and enjoyed its use and profits, is not alone sufficient to make his occupancy adverse to

the interest of appellees. "The reason that the possession of one tenant in common is *prima facie* the possession of all, and that the sole enjoyment of the rents and profits by him does not necessarily amount to a disseizin, is because his acts are susceptible of explanation consistently with the true title. In order, therefore, for the possession of one tenant in common to be adverse to that of his co-tenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of an unequivocal character that notice may be presumed. . . . The rule of law in such case very clearly appears to be that where one tenant in possession, having once acknowledged the right or title of the other tenants, seeks to oust or dispossess them and to turn his occupancy into an adverse possession or enjoyment under an invalid or merely colorable claim of title to the whole, and so as to acquire the title of the entire estate by lapse of time under the statute of limitation, he must show when knowledge of such adverse claim, or of his intention so to hold, was brought home to the other tenants; for from that time only will his possession be regarded as adverse." *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958, and in *Alphin* v. *Blackmon,* 180 Ark. 260, 21 S. W. 2d 426, it is said: "Moore's possession also and the payment of taxes by him were not constructive notice to the appellee of his adversary claim, for the further reason that his wife was the owner of an undivided interest in the lands and a co-tenant of the appellee, and Moore's possession might have been referable to hers, and his possession was not therefore exclusive, notorious and adverse as against all persons."

Mrs. Thomas testified that Dr. Knott, her father, told her about forty years ago that Neely was to have the use of the property for his lifetime, and then it was to revert to the Knott heirs. Mrs. Eva Knott testified that Dr. Knott said that Neely could not sell the property because he did not have any deed to it. He told his daughter, Mrs. Pace, that he had told Neely that he could have the use of the place as long as he lived. From time to time, Dr. Knott drove around and inspected this property along with his other farms. Neely admitted that

he never talked with appellees "about the title (of the land in question) in any shape, form or fashion." He said the place was referred to as his farm or the "Neely Place," and he considered it his property. He admitted writing a letter to Mrs. Pace December 16, 1940, in which he sought to purchase whatever interest appellees might have in the property. Appellant says "that if Dr. Knott had felt that he had any interest in the tract of land involved in this suit, he would have (in his will) made express and specific disposition of it by apt words, as he had done with all his other lands." We think, however, that it is just as probable that Dr. Knott, had he intended to give his interest in the land in question to his son-in-law, Neely, would have made a specific devise to him in his will, or have deeded it to him prior to his, Knott's, death.

As indicated, we think appellant has failed to maintain the burden of proof imposed, that the findings and decree of the lower court are correct, and accordingly, the decree is affirmed.