### CARMICAL *v*. ARKANSAS LUMBER COMPANY.

#### Opinion delivered December 23, 1912.

1. ABANDONMENT—REAL PROPERTY.—At common law, the title to real property is not lost by abandonment, unless the abandonment is accompanied by circumstances of estoppel and limitation; and this without regard to the formality of abandonment, if it was short of a legal deed of conveyance. (Page 666.)

2. QUIETING TITLE—LACHES.—So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he can not be restored to his former state if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. (Page 667.)

3. SAME—LACHES.—In order to bar a suit to remove a cloud upon the title to wild and unimproved land on the ground of laches, a purchaser under a void tax title and his privies must have, prior to the commencement of the suit, paid the taxes upon the land under color of title for at least seven years. (Page 668.)

Appeal from Bradley Chancery Court; *Zachariah T. Wood,* Chancellor; reversed.

## STATEMENT BY THE COURT.

Ollie Carmical, by her guardian, and Emma Drummond, brought suit against appellee to remove the cloud from their title to the west one-half, northwest quarter, section 31, township 15 south, range 10 west,74.37 acres of wild and unimproved lands in Bradley County, Arkansas, and cancel a deed from the State, conveying same, as forfeited tax lands, to appellee.

They claim the lands as the surviving heirs of H. M. Edrington, their father, who acquired the title thereto by patent from the United States Government and died intestate, leaving plaintiffs and Selvyn Edrington, his only heirs at law.

Selvyn Edrington died in 1901 intestate, leaving appellants, his sisters, his only heirs. The lands were sold for taxes of 1873 and 1874 to the State and again in May, 1876, for the taxes of 1873, and 1874 and 1875. The lumber company purchased from the State, paying therefor $1.25 per acre, and same was conveyed to it by its quitclaim deed on March 18, 1904, and paid taxes thereon for the first time in 1905.

The answer alleged the purchase from the State that date; that it had before been donated by the ancestor of appellant to a railroad and abandoned by him, and that it was purchased by the Arkansas Lumber Company, and pleaded laches and estoppel in bar of appellant's right to recover.

There was some testimony tending to show that H. M. Edrington made a donation of the land to the Fort Scott, Natchez & Mississippi Railroad Company, to assist in the construction thereof, but there was no conveyance shown to have been made to said company, and there was also some evidence of declarations made by said Edrington, thirty or forty years before the purchase by the lumber company, that the lands were worthless, and that he was not going to pay taxes further upon them; that he had abandoned them. The testimony shows further that he paid taxes on other lands in the same section and township until 1879.

The lands have greatly enhanced in value since their forfeiture to the State, it being claimed by appellee and stated by some of its witnesses, that the increase in value was due to the efforts and expenditures of appellee company in erecting

a large sawmill and building a railroad and tramroads into the country near the lands.

On the other hand, there was testimony to show that the increase in value of the lands was natural and in proportion to the increase in value of all other lands like situated in the county, and that the value had been enhanced by the construction of the Rock Island Railroad within a mile and a half or two miles of them, and would have so increased in value without regard to the improvements and expenditures of money by appellee, which would have been made without regard to the purchase of this tract of land, in order to develop its other lands and manufacture the timber thereon. There is no question that the lands are wild and unimproved.

The court found that the lands were acquired from the government by H. M. Edrington, father of the plaintiffs, who died intestate, leaving them and Selvyn Edrington, his only heirs at law. He died intestate, in 1901, without issue, leaving his sisters his sole heirs; that the lands were sold for taxes in 1873 to the State and again in 1876 for the taxes of 1873-4 and 5, and that the tax sales were void. That Edrington, nor his heirs, had paid taxes on the lands since 1871. That he had paid taxes on other lands in the same township and section to 1879. That H. M. Edrington had abandoned the lands as worthless at the time they were forfeited to the State for taxes. That it remained of little value until after it was purchased by the lumber company in 1904, since which time it has increased from $7.50 to $12.50 per acre, and that this increase in value was brought about by the said lumber company in the expenditure of money and the erection of a sawmill and railroad near the lands. That the company bought the land from the State, understanding it had been abandoned by Edrington, and built its mill and railroad under that belief, and that the actions and declarations of Edrington were such as to warrant the belief that he had abandoned the lands; that it had paid all the taxes on the lands since its purchase, in March, 1905; declared the claim of Emma Drummond stale and barred by laches, and permitted Ollie Carmical to recover a one-third interest in the land as the heir of her father and one-sixth as the heir of her brother, adjudging that she pay one-half the taxes, with interest, which was declared a lien against

her interest in the land. From this decree both Emma Drummond and the lumber company appealed.

*Williamson & Williamson,* for appellant.

At the common law the title to real estate could not be lost by abandonment, and that law obtains in this State.

An abandonment, however formal it may be, if unaccompanied by circumstances of estoppel or limitation, and if it falls short of a deed of conveyance, has no effect upon the legal title; and the owner may re-enter and eject any one who, in reliance upon the abandonment, may have entered into possession. Tiedeman on Real Property, § 739.

Abandonment will not amount to laches, short of seven full years payment of taxes, unless there are supervening equities in favor of the holder of the tax title. 81 Ark. 154; 83 Ark. 154, 161.

*Fred L. Purcell,* for appellee.

The chancellor's decree is right under the facts. The case is controlled by 81 Ark. 352, and 72 Ark. 101.

Kirby, J., (after stating the facts). It is undisputed that the lands are unimproved and uninclosed, and have been since they were acquired by plaintiff's ancestor from the Government; also that Ollie Carmical and Emma Drummond acquired all the title of their ancestor to the land. Neither is it contended that the lands were not forfeited to the State, as alleged, nor that the tax sales are not void. The sole question for determination is whether appellant can be barred by laches from the assertion of her claim to this land, the lumber company not having paid taxes thereon under color of title for the statutory period of seven years.

The lands were wild and unimproved and in the actual possession of no one, but necessarily in the constructive possession of the true owner all the time from their illegal forfeiture, and the owners could not be barred of their right thereto, except by limitation or by laches.

It is not disputed that the lumber company paid taxes for the first time on the lands after their purchase on March 24, 1905, and that the suit was filed on December 29, 1910, less than six years thereafter. The company, not having paid

taxes for seven years under its color of title, did not acquire title thereto by limitation.

At the common law, which is in force in this State, the title to real property is not lost by abandonment, unless the abandonment is accompanied by circumstances of estoppel and limitation, and this without regard to the formality of abandonment, if it was short of a legal deed of conveyance; the title being in no wise thereby affected nor the owner thereafter prevented from re-entering and ejecting any who had entered into possession in reliance upon the abandonment, Tiedeman on Real Property, § 739.

The contention that appellant is barred by laches from asserting her title, because of the failure to pay taxes on the lands from their forfeiture to the State to the beginning of the suit, and that they had meanwhile greatly enhanced in value, is not well founded nor sufficient to support the plea of laches.

In *Fordyce* v. *Vickers*, 99 Ark. 500, the court said:   "Before the doctrine of laches can be invoked, the delay of the true owner must mislead and work a disadvantage to the party making this defense," and also "the true owner of the land can not be divested of a title thereto by the mere failure to pay taxes and the enhancement of it in value.   The doctrine of laches is founded upon the principle, not only that there had been such a delay in the payment of taxes by the owner, indicating either that he considers his claim to the land worthless, or a total abandonment of his right to the property, and in the meanwhile a great enhancement in the value thereof, but also upon the ground that the party asserting a claim to it has good reason to believe that the alleged rights are worthless or have been abandoned and, acting upon such belief, has paid taxes on the lands under color of title at least the period of time named by the statute of limitations, and that because of the change of conditions during such period of delay and the enhancement of the value it would be inequitable to permit the owner to assert his title thereto.   The party setting up the equitable defense of laches must show that he and those under whom he claims have paid the taxes on the land under a color of title thereto."

In *Osceola Land Co.* v. *Henderson*, 81 Ark. 432, 100 S. W.

896, it is said: "Mere laches does not of itself bar the plaintiff.  Laches in legal significance is not mere delay, but delay that works a disadvantage to another.  So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith so changed that he can not be restored to his former state if the right be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right."

In *Herget* v. *McLeod*, 102 Ark. 60, the court, following the rule laid down in *Chancellor* v. *Banks*, after a discussion of it and the prior decisions of the court, said: "It will thus appear that, before the plea of laches can be available to deprive the true owner of his land, it must be shown that the party claiming the same and his grantors have, prior to the commencement of the suit, paid the taxes on the land under color of title for at least seven years, the statutory period of limitation.  The fact that the true owner had failed to pay the taxes on the land for a period longer than seven years will not alone bar him, but it must appear that during such period the defendant, or those under whom he claims, have previously paid the taxes thereon for at least seven years prior to the institution of the suit before the true owner can be declared barred by laches."

There is no claim of any statement or conduct of appellants relative to the ownership of this land that would estop them from asserting their title thereto against the Arkansas Lumber Company, nor is there shown any such conduct on the part of their ancestor, through whom they acquired title, as would have estopped him from making any such claim. All statements attributed to him relating to the lands and their worthlessness were made long years before their purchase by the lumber company, and furnished no inducement for such purchase, nor were they relied on in the making of it.  Such being the case, it can make no difference how greatly the lands have been enhanced in value, no improvements being made thereon by appellant, even if some of the enhancement in value be properly attributable to the expenditure of money and effort by the lumber company for the development and man-

ufacture of the timber upon its other lands in the immediate vicinity. This suit having been brought after the purchase and before said lumber company had paid the taxes thereon, under its color of title for seven years, appellants are not barred by laches. *Fordyce* v. *Vickers, supra; Herget* v. *McLeod, supra; Tatum* v. *Ark. Lumber Co.*, 103 Ark. 251.

It follows, the court erred in rendering the decree, which is reversed, and the cause remanded, with directions to enter a decree cancelling the tax deed to the lumber company as a cloud upon the title of appellants, and quieting their title, and that appellants be required to pay the taxes for 1873, 1874 and 1875, and the taxes paid by the lumber company on the lands since its purchase thereof, with 6 per cent. interest, which shall be declared and fixed as a lien against the land.