SHARPP v. STODGHILL.

4-3971

Opinion delivered October 28, 1935.

J. R. Parker, for appellant.
J. T. Cheairs, for appellees.

MEHAFFY, J. The land in controversy consists of 80 acres which formerly belonged to appellees but was forfeited for taxes, a portion of it in 1920, another portion of it in 1922, and another portion in 1923.

It appears from the evidence that the appellees moved away from this land when it was sold for taxes. They took up their residence in close proximity to the land. They did not pay any improvement taxes or other taxes, and exercised no control and manifested no interest in the land for more than 12 years. They did not make any claim until appellant had secured his donation deed from the State. During that 12 years they did not cultivate the land and made no effort to collect rent from those who did cultivate it. The land was in a drainage district and a levee district.

The drainage and levee districts each brought suits. The lands were condemned in each case, sold under a decree of the chancery court, and the districts became the purchasers. The land was sold for levee taxes for the years 1922 and 1923 and for drainage taxes in 1923 and 1924. Thereafter the appellees purchased the land in controversy from the levee district and the drainage district.

Appellees allege in their complaint that they are entitled to recover under their original deed and also under the deeds from the improvement districts. There was a divorce suit in the Ashley Chancery Court between appellant and his wife, and the court held that this particular tract of land should be sold and one-half of the proceeds paid to Mrs. Mattie Sharpp, the wife of J. L. Sharpp.

The chancery court held that the appellees had abandoned the real estate involved and had no rights under their original ownership, but held that, after having abandoned it, they purchased from the improvement districts, and their deeds acquired after their abandonment was a superior title. It is agreed that the forfeiture for taxes and sale to the State are void. The forfeiture for taxes being void, the State did not acquire title, and the only interest the State had was a paramount lien for its taxes. If the appellees had not abandoned

the property, their purchase from the improvement districts would simply have been a redemption, because, as long as they owned the property, it was their duty to pay the taxes and assessments.

It is earnestly contended by the appellant that there is no such thing as abandonment of real property under the laws of this State. They cite *Carmical* v. *Ark. Lbr. Co.*, 105 Ark. 663, 152 S. W. 286, and quote from that opinion as follows:

"At common-law, the title to real property is not lost by abandonment unless the abandonment is accompanied by circumstances of estoppel and limitations, and this without regard to the formality of abandonment, if it was short of a legal deed of conveyance."

This is the rule established by the decisions of this court, and, unless the abandonment is shown by the evidence to have been accompanied by circumstances of estoppel and limitations, there would be no abandonment.

The circumstances are, as shown by the evidence, that, after the sale to the State for taxes, the appellees moved from this property to other property in the community, did not occupy nor cultivate any portion of it for more than 12 years, and did not collect or attempt to collect rent from others who did occupy it.

"It has been supposed that title to land could be lost by abandonment on the part of the owner; but, with the possible exception to be mentioned hereafter, no legal title to corporeal real property can be lost or destroyed by any act of abandonment on the part of the owner. * * * To constitute the abandonment by the real owner thereof, there must be a concurrence of the act of leaving the premises vacant so that they may be appropriated by the next occupant, and the intention of not returning." 3 Thompson on Real Property, p. 565.

We think the circumstances and evidence in this case conclusively show the concurrence of the act of leaving the premises vacant, and the intention of not returning. They permitted others to occupy and cultivate the land for years without attempting to collect rent.

The abandonment of real property does not confer title on the next occupant or any other person, but it disentitles the person who has abandoned it to reclaim it.

It is insisted, however, by appellant that, since appellees alleged in their complaint and insisted that they were entitled to recover under their original ownership, they could not recover under the title acquired later.

The appellees insisted that they had a right both under their original deeds and under the deeds recently acquired. Of course, this could not be true, for the reason that, if they had any rights under the original deeds, they could not have under the deeds from the improvement districts, because, if appellees owned the land, their purchase from the improvement districts would have been merely redemption, and would have given them no title, because they would have already had title. But the fact that appellees thought they could recover under each of the deeds did not prevent them from recovering under a title which was valid.

"The general rule as to election of remedies is that where a party has a right to choose one of two or more appropriate but inconsistent remedies, and with full knowledge of all the facts of the case and of his rights, makes a deliberate choice of one, then he is bound by his election and is estopped from again electing or resorting to the other remedy, although the judgment obtained in the first action fails to afford relief to the party making the election.

"Election is to be distinguished from mistake in remedy. The pursuit of a remedy which one supposes he possesses, but which in fact has no existence, is not an election between remedies, but a mistake as to the available remedy, and will not prevent a subsequent recourse to whatever remedial right was originally available. This rule applies whether the mistake be of law or fact; but if a party persists in his erroneous course after the disclosure of his true remedy, he may be held bound thereby." 5 Standard Encyclopedia Procedure, pp. 80 *et seq.; State* v. *Bank of Commerce of Grand Island,* 61 Neb. 22, 84 N. W. 406; *Turner* v. *Grimes,* 75 Neb. 412, 106 N. W. 465; *Stone* v. *Snell,* 86 Neb. 581, 125 N. W. 1108.

Since it is agreed that the sale to the State was void, it had no title to the land, but merely a lien for taxes, and any one who purchased from the improvement districts would hold subject to the State's superior lien for taxes. Therefore the deed from the State to Sharpp on May 7, 1930, was void, and Sharpp acquired no title to said land through said deed.

Sharpp, however, put valuable improvements on the land and paid $10 in acquiring the donation deed, and $21.65 for redeeming from tax sales, making a total of $756.65. However, the appellees were entitled to the rent after they acquired title from the improvement districts. The evidence shows, and the court found, that $350 was a reasonable rent for the one year, and therefore deducted the $350 from the $756.65, leaving the balance due Sharpp $406.65.

The chancery court correctly held that Sharpp, occupying the land under color of title, was entitled to be paid and entitled to have a lien declared on the land to secure the payment of the amount found due him. The amount due on the land owned by T. V. Stodghill is $291.99. The amount of the lien on the land owned by Jettie Stodghill is $114.66. *Wilkins* v. *Maggard,* 190 Ark. 532, 79 S. W. (2d) 1003.

The appellees prosecuted a cross-appeal and contend that rents should be charged against Sharpp for the years 1930 to 1935, inclusive, and that Sharpp should have no lien on the parcels of land on which no improvements were made. The appellees were only entitled to rents after they acquired title from the improvement districts, and it appears that the entire 80-acre tract was purchased by Sharpp, and the chancellor correctly gave him a lien on the 80 acres.

The decree of the chancery court is affirmed.

BUTLER, J. (dissenting). The appellee, T. V. Stodghill, brought suit in the court below to cancel a tax deed executed by the State to appellant, J. Lee Sharpp. The appellee alleged, and it is not denied, that he acquired title to a certain part of the lands conveyed from the Southeast Arkansas Levee District and that said district had acquired title by virtue of a purchase at a sale made

by the commissioner of the Chicot Chancery Court on the 20th day of December, 1924. Appellee further alleged said district had purchased the same at a sale made under order of the said court which was confirmed and deed executed on April 1, 1929; also appellant claimed title by purchase from the Eudora Western Drainage District. Appellant alleged that said drainage district had purchased at a sale made under order of the chancery court the report of which had been confirmed and a deed made on January 27, 1930. In addition to this, appellant also claimed title by deeds from some of the original owners.

The answer of Sharpp, the appellant, alleged title in him by virtue of a donation deed executed and delivered to him by the State of Arkansas on May 7, 1930, and that he was at that time, and has been since, in the open, notorious, peaceable and adverse possession of the lands, claiming to be the owner thereof under said deed. He expressly pleaded the two-year statute of limitation in support of his title and in bar of the title asserted by appellee.

The facts in the case are that the sale was made to the State for delinquent taxes, and that such sale was void because of certain irregularities. It also appears that appellee, Stodghill, was the owner of the lands at the time of the forfeiture to the State. He had previously mortgaged the lands and afterward abandoned them without paying the mortgage debt. The lands were located within the two districts named above and were sold for levee and improvement taxes and purchased by the said districts and conveyed to him on the dates above mentioned.

In upholding the title acquired by the appellee from the levee and drainage districts, the learned chancellor, in stating the position of appellant (the defendant in the court below) said: ''Defendant defends upon the ground of laches; also upon the seven-year statute of limitation, and the two-year limitation statute under § 6947 of Crawford & Moses' Digest.'' The remainder of the findings and decree of the chancellor wholly ignore this defense, as does also the majority of this court in affirming the decree of the trial court.

Section 6947 of the Digest, among other provisions, fixes the limitation of actions against those who hold lands under donation deeds from the State at two years. It is settled by the decisions of this court that possession of lands for the statutory period works an investiture of title and divests the title to the lands so held from all others. It is also well settled that the maxim, *"nullum tempus occurrit regi"* applies only to the sovereign itself and not to public corporations or other such governmental agencies. As to these the statute operates as against an individual. *Fort Smith* v. *McKibbin,* 41 Ark. 45; *Helena* v. *Horner,* 58 Ark. 151, 23 S. W. 966; *Book* v. *Polk,* 81 Ark. 244, 98 S. W. 1049; *Tarleton Drainage District* v. *American Investment Company,* 186 Ark. 20, 52 S. W. (2d) 738.

Section 6947, *supra,* has been held to apply in favor of those holding lands under a deed from the Commissioner of State Lands and under donation deeds executed by said Commissioner. *Sims* v. *Cumby,* 53 Ark. 418, 14 S. W. 623; *Helena* v. *Horner, supra.* It has also been decided in a long line of cases by this court that possession under a tax title maintained continuously, openly and adversely for two years prior to the bringing of a suit is sufficient to vest title, though the tax title was void in the beginning. *Woolfork* v. *Buckner,* 60 Ark. 163, 29 S. W. 372; *Dickinson* v. *Hardy,* 79 Ark. 364, 96 S. W. 355; *Johnson* v. *Elder,* 92 Ark. 30, 121 S. W. 1066; *Black* v. *Brown,* 129 Ark. 270, 195 S. W. 673.

It indubitably appears that appellant had been in the continuous adverse possession of the lands involved under his donation deed from the State for more than two years between the dates when the levee and drainage districts purchased the same at the sale made by order of the Chicot Chancery Court for delinquent levee and drainage taxes and conveyed them to appellee. Therefore, the title of said districts had become barred and divested before they conveyed the same to appellee, the date of the drainage district's deed to the appellee being November 29, 1933, and that of the levee district December 16, 1933. These deeds to the appellee could not affect

the title of appellant, for before these dates his title had vested by operation of the statute of limitation and neither the original owner nor the levee and drainage districts had any title to convey to the appellee.

For the reasons stated, I respectfully dissent from the opinion of the majority, and am authorized to say that Mr. Justice BAKER concurs in the views here expressed.