Newman v. Newman.

4-7039 169 S. W. 2d 667

Opinion delivered March 29, 1943.

*Harper & Harper,* for appellant.

*I. S. Simmons* and *D. L. Grace,* for appellee.

Holt, J. The parties to this action, George and Walter Newman, are brothers. The land involved aggregates 95 acres. Seventy-eight acres of this tract were conveyed to George and Walter Newman, jointly, in 1914 by their father and mother, and the remaining 17 acres were conveyed to them, jointly, in 1927, by their mother, after their father's death. The two brothers lived together upon this farm and operated it together until about the latter part of 1934, when Walter Newman moved away. George remained on the property until 1941, when the United States acquired the property as a part of Camp Chaffee for military purposes.

November 28, 1941, appellee, Walter Newman, filed complaint in equity seeking to partition the land involved, alleging that it was owned jointly by him and his brother, George. George Newman answered, denying the allegations of the complaint and alleged that he was the sole owner of the property and in possession. He claimed title by adverse possession of more than seven years, and alleged that the court was without jurisdiction. Thereafter the court, on its own motion and without objection, transferred the cause to the circuit court. After the transfer of the cause, appellee, Walter Newman, filed a reply in which he denied the allegations of the answer and alleged that he and his brother, George, were joint owners of the land and so operated it until December, 1934, when George, who had for some time previously become quarrelsome and difficult and "hard to get along with," assaulted appellee and struck him "across the neck with a large stick or club," knocking

him down and causing injuries which confined him to his bed for several days; that as soon as he was able he moved from the place, solely on "account of the fact that he realized that if he remained on the premises serious trouble would result"; that he did not leave with the intention of abandoning the property, but because he felt that his life was in danger.

By agreement the cause was tried before the court sitting as a jury, which resulted in the following findings of fact: "The plaintiff and defendant are brothers of the wholeblood and derived their undivided interest in said land described in the plaintiff's complaint by means of deeds from their father and mother. They occupied the land together until in November, 1934; that plaintiff and defendant had a falling out between themselves and defendant assaulted plaintiff, inflicting injuries upon his person, and the plaintiff moved off the land out of precaution of further trouble and out of fear of defendant and that he did not abandon the same. The defendant has not occupied said land, openly, notoriously and publicly with notice to plaintiff of his intention to claim same adversely to plaintiff or other person. The plaintiff and defendant occupied the land together as joint owners, cultivated and improved same until in November, 1934. The plaintiff and defendant are equal owners, share and share alike. The plaintiff's cattle remained upon the premises in question, grazed and fed upon the pastures thereof and were fed from the products of the cultivated land, until the spring and year of 1937."

The court also found that on November 25, 1934, Walter wrote his brother, George—"If you want to you can have the peanuts picked off and sell them and pay the F. L. Bank I am thru—I am not going to spend another cent on the place. Walter L. N.," and that on November 25, 1934, "Walter Newman moved off of the property in question and thereafter the defendant, George K. Newman, remained in exclusive possession thereof and paid the taxes and made payments on the loan of the Federal Land Bank and subsequently caused the loan to be transferred solely to his name, and that the plaintiff, Walter Newman, wrote said note and moved

away from said property more than seven years prior to the filing of this complaint.''

The court then declared the issues in favor of appellee, Walter Newman, and adjudged that the property in question was vested in appellant and appellee as tenants in common and that appellant had not acquired title by adverse possession or otherwise, to the exclusion of appellee. This appeal followed.

Appellant says the issues here are ''Was the behavior of Walter Newman in relation to the property sufficient to constitute a legal abandonment by him of his title; and was the subsequent conduct of George Newman sufficient to vest complete title in him by adverse possession as against Walter Newman?''

The primary question for consideration here being one of fact, it is our duty to permit the judgment of the court below to stand, if based upon legally sufficient evidence, and we must accord to that verdict the same degree of conclusiveness as the verdict of a jury. See *Shinn* v. *Plott*, 82 Ark. 260, 101 S. W. 742, and *American Insurance Co. of Newark, N. J.*, v. *Brannan*, 184 Ark. 978, 44 S. W. 2d 346. In the latter case this court said (quoting from *Little River County* v. *Buron*, 165 Ark. 535, 265 S. W. 61): ''On this question of fact, the circuit court sustained the finding of the county court, and, under settled rules of this court, where circuit courts are required by law to pass upon questions of fact, the findings are as conclusive on appeal as the verdicts of juries.''

After a careful review of this record we think the findings of fact of the trial court were based upon substantial testimony, and his conclusions of law correct.

The undisputed proof is that George and Walter Newman acquired the land involved by deeds of conveyance from their father and mother, lived upon and jointly owned and operated the farm until the latter part of 1934. It is also undisputed that these two brothers were unable to live together in peace and harmony and that George violently assaulted Walter a few days before Walter moved from the farm. While Walter testified

that his brother struck him with a club, knocked him down and inflicted injuries which confined him to his bed for several days, George denied that he struck Walter with a club, but admitted that he hit him with his fist. The mother of these boys testified that George had a difficulty with Walter and knocked him down. Walter testified that they operated the farm as partners; that he was driven from the farm against his will and did not try to return to live with his brother, fearing that if he did so his life would be in danger. Walter left some of his cattle and effects on the farm until 1937, and, quoting from his testimony, "my cows and everything stayed on the place in peaceable possession until 1937," when he went back, divided the cattle which he and his brother owned jointly, and settled with George.

While a number of witnesses testified both on behalf of appellant and appellee, we think it could serve no useful purpose to attempt to review the testimony here. It suffices to say that when all of the testimony is considered, it is our view that there was ample testimony to support the court's finding that Walter Newman had not abandoned the property and that he and his brother, George, owned the property as tenants in common. It is also our opinion that the court was justified in finding on substantial testimony that the appellee was assaulted and driven from the land in question by his brother, George, forceably, against his will, and that this did not amount to abandonment.

We also think there is ample evidence to support the court's finding that George Newman "has not occupied said land, openly, notoriously and publicly with notice to plaintiff of his intention to claim same adversely to plaintiff or other person." In *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489, this court said: "In order that adverse possession may ripen into ownership, possession for seven years must have been actual, open, notorious, continuous, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner. *Watson* v. *Hardin,* 97 Ark. 33, 132 S. W. 1002. . . . Decisions of this court are in harmony with the general rule laid down in 2 Corpus Juris Secundum, Adverse Possession,

§ 45, p. 559, which reads as follows: 'Notorious possession contemplates possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood.' '' And in *Elrod* v. *Elrod,* 192 Ark. 458, 92 S. W. 2d 211, this court said: "The only other question remaining in this case is that of adverse possession. The propositions of law governing this situation are well settled and recognized. The possession of some of the joint tenants, or tenants in common, is the possession of all, and continues to be such until there is some act of ouster sufficient in itself to give notice that those in possession are claiming in hostility to, and not in conformity with, the rights of others having interests in the property. *Keith* v. *Wheeler,* 105 Ark. 318, 151 S. W. 284. One in possession is presumed to hold in recognition of the rights of his cotenants. *Patterson* v. *Miller,* 154 Ark. 124, 241 S. W. 875."

It is undisputed that appellee left some of his cattle and personal effects on this farm until 1937, approximately four years before this suit was filed. We find no substantial evidence in this record that appellant was "notoriously" asserting and claiming ownership of this land in such manner as would constitute adverse possession under the law. While appellee denies having written the note, *supra,* to his brother, George, conceding that he did write it, as the court found, we do not think it constituted an abandonment by Walter of his undivided one-half interest in the property. Its effect was to direct George to apply the proceeds from the sale of peanuts produced on the farm by these two brothers in payment of the Federal Land Bank. Whether the proceeds from the peanut crop were sufficient to pay the bank, the record does not disclose.

Appellant, in support of his contention of abandonment and adverse possession, relies strongly upon the case of *Sharpp* v. *Stodghill,* 191 Ark. 500, 86 S. W. 934, 87 S. W. 2d 577. We are of the opinion, however, that that case does not control here. It is clearly distinguishable on the facts. There the parties had clearly abandoned the property for more than 12 years. While it is true that appellee in the instant case, after he was driven from the

farm, paid no more taxes, this alone is not sufficient to prove abandonment, but may be considered along with other facts and circumstances to show an intention of abandonment. See *Gill* v. *Dunn,* 196 Ark. 1178, 116 S. W. 2d 612.

Finding no error, the judgment is affirmed.