C. W. LEWIS LUMBER COMPANY *v.* FLETCHER.

5-559                                   274 S. W. 2d 472

Opinion delivered January 17, 1955.

*Ernest Briner,* for appellant.

*Ben M. McCray,* for appellee.

GEORGE ROSE SMITH, J.    This is an action by the appellant lumber company to recover for the wrongful cutting of timber worth $987.44.    It is undisputed that the defendant partnership cut timber on land owned by the plaintiff, but the trespass was not the result of bad faith. Instead, the defendants were misled by the fact that the plaintiff had made an error in blazing and painting trees along its southern boundary line.    By its verdict for the defendants the jury in effect found that the plaintiff had abandoned its title to the timber in dispute.

In 1939 the plaintiff bought timberland in the south half of a certain section in Saline County.    It is the com-

pany's practice to mark its boundaries with blazes and yellow paint, these lines being renewed every three or four years. In this instance a mistake was made, so that the marked line, although straight, ran diagonally to the compass rather than due east and west. The painted line began 212 feet south of the true line at its western end and ran thence in a northeasterly direction, crossing the true line about halfway along its course and terminating at a point on the east boundary 300 feet north of the true line. Thus the erroneous line enclosed, in a figurative sense, a triangle on the west which the company did not own and left unenclosed a triangle on the east which the company did own.

The company was unquestionably on notice that a mistake had been made. Its president testified that he had known ever since 1939 that the southern boundary line was not right. An employee who repainted the line in December of 1951 noticed the error and reported it to the company. Yet the plaintiff made no effort to ascertain the true line or to correct its painted line. To the contrary, it renewed its markings two or three times after 1939 and in one instance made a selective cutting of timber in the west triangle, which it did not own.

In March of 1952 the defendants purchased timberland lying immediately south of the plaintiff's property. Before their purchase the defendants examined the premises; they say that they recognized the plaintiff's distinctive yellow line and relied upon the assumption that it was correct. A day or two after their purchase the defendants began cutting timber in the eastern triangle, which the plaintiff actually owned. After the greater part, if not all, of the trees in this triangle had been cut a representative of the plaintiff informed the defendants that the location of the true line was in doubt. The parties agreed that a survey would be made at their joint expense, and this was eventually done. The survey was not completed until about three months later, and there is evidence that in the meantime the defendants' employees returned to the eastern triangle and removed whatever timber was still left. Later on the

plaintiff brought this suit for the value of the entire amount of timber cut in the eastern triangle.

The appellant's basic argument is that the court erred in submitting the question of abandonment of title to the jury, estoppel alone having been pleaded. We cannot say that this procedure, taken upon the court's own initiative, was prejudicial. There was substantial evidence on the issue of abandonment. It is true that, since in legal theory the title to real property must always rest in someone, a person cannot by abandonment alone divest himself of title. But we have recognized that the title may be lost when the abandonment is accompanied by circumstances of estoppel. *Carmical* v. *Ark. Lbr. Co.*, 105 Ark. 663, 152 S. W. 286; *Sharpp* v. *Stodghill*, 191 Ark. 500, 86 S. W. 2d 934, 87 S. W. 2d 577. The exception applies here. The appellant's sole purpose in maintaining painted lines was to put the world on notice of its claim of title. That it persisted in that conduct when it had reason to know that the markings were wrong supplies a necessary element of estoppel. And, since the proof raised an issue of abandonment, the plaintiff was not hurt by the fact that estoppel alone was pleaded. A finding of abandonment involves not only the matter of estoppel but also an intent on the plaintiff's part to relinquish its claim. Hence the instructions were more favorable to the plaintiff than they need have been.

It is contended that the jury should in any event have returned a verdict for the plaintiff for that part of the timber that was removed from the eastern triangle after the parties had agreed to survey the line. The plaintiff, however, did not submit an instruction that would have brought this distinction to the jury's attention; the requested instructions treated all the timber alike. Since there was conflicting evidence as to the amount cut after the survey agreement, the jury alone could have determined this issue. Its submission not having been asked, the court was not required to set aside the verdict for the reason now urged.

Finally, it is argued that the court should have given a requested instruction which would have permitted the jury to award to the plaintiff the value of other timber which the defendants cut from the western triangle after the survey had been completed. Here the appellant's theory is that if the appellees are to prevail as to the eastern triangle, where they did not own the timber, it would be equitable to charge them for the trees cut in the western triangle, which they did own. This theory was not contained in the pleadings, which related to the easttern triangle only, and we are not willing to say that the court abused its discretion in refusing to inject this issue after the proof had all been taken.

Affirmed.