BAXTER *v.* YOUNG.

5-1747                                   320 S. W. 2d 640

Opinion delivered February 2, 1959.

*John F. Gibson & Smith & Smith,* for appellant.

*Pat H. Mullis & Lloyd B. McCain,* for appellee.

J. SEABORN HOLT, Associate Justice. **This cause of** action arose in 1952 when appellants took possession of the land involved. David and Corah Young (brother and sister) inherited the 80 acres of land here from their grandmother, Melvina Reed, who died intestate in 1938. They were her sole surviving heirs and each inherited an undivided one-half interest in the land as tenants in common. David did not live on the land after his grandmother's death. He moved to different parts of the country, finally locating in Chicago and there he saw his sister, Corah, in 1955 which was the second time he had seen her since his grandmother's death. Corah, who was living on the farm with her grandmother when she died, continued on the farm and operated it up to 1952, when she executed a quit-claim deed to the farm to John Baxter. During the time that she operated the farm, she borrowed money with which to operate and make small improvements and in 1948 executed a mortgage on the property to John Baxter to secure the payment of a $300 promissory note due November 1, 1948, and other advances if any. This mortgage was recorded March 6, 1949, and recited that, "Corah Young, only surviving heir of William Reed, Deceased, and all of which property said grantor warrant to be free from incumbrances and not subject to any adverse claim." At all times that Corah did business with Baxter she represented to him that her brother, David, was dead and that she was the sole owner of the property.

From 1950 through 1956 the taxes were paid by Mr. Baxter or the Baxter Land Company.

Following the above mortgage, Corah became further indebted to Baxter in the total amount of $2,525.13 and on January 7, 1950, to avoid a mortgage foreclosure, she executed to Baxter a quit-claim deed purporting to convey the entire title to the land. She remained in possession for the years 1950-1951 inclusive, and the deed was recorded December 13, 1951.

On February 28, 1952 Baxter conveyed the land to the Baxter Land Company, a family corporation. In February 1952, Corah moved from the land and surrendered possession to the Baxter Land Company which immediately went into possession and has claimed ownership since.

David, appellee, claimed that he had no notice of any adverse claim to his land until 1955 when his sister saw him in Chicago. He claims an undivided one-half interest either as a tenant in common with his sister, or as tenant in common with the defendants, that the quit-claim deed to Baxter which purports to convey the fee should be re-formed to show that it does not affect his one-half interest, that the deed from Baxter to the Baxter Land Company insofar as it affects him should be cancelled, that the title to his one-half interest should be quieted, and for an accounting of rents and profits of the mortgagee in possession for the years 1952, 1953, 1954, 1955 and 1956.

The appellants, on the other hand, deny that David has any interest in the land and is now barred from asserting his rights thereto by estoppel, abandonment, their adverse possession, laches and the statute of limitations, or should it be found that David was not estopped, then that appellants should be decreed to have a lien upon the full interest in said land to secure full payment of their mortgage.

The present suit was filed November 12, 1956 and on a trial March 20, 1957, after an extended hearing, the court found that appellee, David Young, and appellant, Baxter Land Company, are tenants in common of the 80 acre tract involved, each owning a one-half undivided interest therein, that David was not barred by laches, estoppel, limitations or adverse possession from asserting his rights to his one-half interest in the property and further, awarded David $898.25 which represents one-half of the rents and profits from the land while in possession of appellants for the years 1952, 1953, 1954, 1955 and 1956 inclusive.

For reversal appellant relies on the following points:

"(1)  David Young has slept on his rights too long and is, therefore, absolutely barred by laches and limitations from any relief whatever . . .

(2)  Finding that his sister had lost the lands, David conspired with Corah to try to help her salvage something from innocent purchasers, — the defendants.

(3)  David did not come into court with clean hands . . .

(4)  If, . . . David should be entitled to recover anything whatever, the lower court used the wrong formula in arriving at a rental basis of the lands."

On the record presented we have concluded that the trial court was correct in holding that David (appellee) was not estopped to claim his one-half undivided interest in this 80 acre tract as a co-tenant, by abandonment, laches, adverse possession, estoppel or for any other reason.  It is undisputed that David and Corah inherited and held this land as tenants in common as the sole surviving heirs of their grandmother when she died intestate in 1938.  We think the evidence falls far short of showing abandonment on the part of David or that he was in any manner barred from asserting his rights. The evidence showed that David permitted his sister, a widow, to occupy the land so that she could better support herself.  There is no evidence that he ever executed a deed or other instrument affecting his title, or that he made any statements indicating his abandonment of the property.  His only act, or acts, that might indicate abandonment was his non-action during the approximately 18 years he was off the land, paying no taxes, collecting no rents or profits, exercising no control or contributing to any improvements.

"At the common law, which is in force in this state, the title to real property is not lost by abandonment, unless the abandonment is accompanied by circumstances of estoppel and limitations, and this without regard to

the formality of abandonment, if it was short of a legal deed of conveyance; the title being in no wise thereby affected nor the owner thereafter prevented from re-entering and ejecting any who had entered into possession in reliance upon the abandonment"—*Carmical* v. *Arkansas Lumber Co.*, 105 Ark. 663, 667, 152 S. W. 286.

"Mere lapse of time does not dissolve a co-tenancy—" *Halloway* v. *Berenzen*, 208 Ark. 849, 852, 188 S. W. 2d 298. "The possession of some of the joint tenants, or tenants in common, is the possession of all, and continues to be such until there is some act of ouster sufficient in itself to give notice that those in possession are claiming in hostility to, and not in conformity with, the rights of others having interests in the property. One in possession is presumed to hold in recognition of the rights of his cotenants." *Newman* v. *Newman*, 205 Ark. 590, 595, 169 S. W. 2d 667. "A number of presumptions and inferences are indulged in connection with the relation of co-tenancy. Until an actual ouster is shown, the law presumes that the possession of one co-owner is the possession of all,—" 14 Am. Jur. Cotenancy, Sec. 102.

In order for appellants to prevail on their claim of adverse possession for seven years, they must show, in addition to their admitted adverse possession for four years and nine months by virtue of their deed by Corah Young to them in 1952, an additional two years and three months needed to complete the seven years, and to do this, they seek to "tack on" this two years and three months the possession of Corah Young and her co-tenant, David, under the claim that her possession was also adverse to that of David. To do this appellants had to prove actual notice to David that she (Corah) was so claiming adversely or that her conduct was so open and notorious that she was claiming adversely to him that he should have known of her claim. This, we think as indicated, she failed to do.

During this period of two years and three months, which appellants seek to tack on, the relationship of brother and sister existed and for this reason, as we

stated in *Staggs* v. *Story,* 220 Ark. 823, 827, 250 S. W. 2d 125, ''In the present case, on account of the family relationship of the parties stronger evidence, of adverse possession of appellants to the disputed strip . . . was required than in those cases where no such relationship existed. Appellants have failed to meet this burden.''

As to appellant's contention that David stood by, did nothing, and is estopped to assert his rights, what we have said above applies with equal force to this contention. We find it to be without merit. Corah was rightfully in possession. She was free to mortgage *her interest* in the land and use the money as she saw fit. She was required to pay the taxes, keep the property in a state of repair and was authorized to convey her *interest* in the land in satisfaction of a mortgaged debt. Her right to mortgage and convey extended only to her one-half undivided interest.—*Magnolia Grocer Company* v. *Clayton,* 179 Ark. 661, 17 S. W. 2d 877.

On appellant's contention that appellee is barred by laches, little need be said. ''Laches, in legal significance, is not mere delay, but delay that works disadvantage to another. So long as parties are in the same condition, it matters little whether he presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief.'' *Seawood* v. *Ozan Lumber Company,* 221 Ark. 196, 202, 252 S. W. 2d 829. We fail to find any changes in the condition or relation to the parties here to the property which would make it inequitable to enforce appellees claim.

There appears to be no loss of title, intervention of equities or change of relation of the parties and we hold that the defense of laches is therefore not applicable. We find no evidence in this record of a conspiracy between Corah and David as contended in appellant's point two above, nor do we find sufficient evidence to support appellant's claim in point three above that David did not come into court with clean hands.

We have concluded, however, that the court erred in so much of the decree directing that David should be allowed recovery for the rents and profits from operating the land for the years 1952 and 1953, for the reason that such rents and profits had not accrued within the three years next before the filing of the present suit.

Ark. Stats. 1947, Sections 34-1424-1425, known as the "Betterment Act," provide: (34-1424) "Assessment of value of improvements—Improvements exceeding mesne profits and damages—Judgment.—The court or jury trying such cause shall assess the value of such improvements in the same action in which the title to said lands is adjudicated; and on such trial the damages sustained by the owner of the lands from waste, and such mesne profits as may be allowed by law, shall also be assessed, and if the value of the improvements made by the occupant and the taxes paid as aforesaid shall exceed the amount of said damages and mesne profits combined, the court shall enter an order as a part of the final judgment providing that no writ shall issue for the possession of the lands in favor of the successful party until payment has been made to such occupant of the balance due him for such improvements and the taxes paid; and such amount shall be a lien on said lands, which may be enforced by equitable proceedings at any time within three (3) years after the date of such judgment." And Section 34-1425, "Limitation on recovery of mesne profits.—In recoveries against such occupants no account for any mesne profits shall be allowed unless the same shall have accrued within three (3) years next before the commencement of the suit in which they may be claimed."

This court, in the case of *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88, in construing these sections (which were then sections 2755-2756, Kirby's Digest) in fixing the rights of the parties thereunder, said: "As is said to the case of *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373, the betterment act is 'one to adjust equities between the owners of the lands and persons who have occupied the same under color of title, believing themselves to be the owners—*bona fide* occupants. * * * In other words, when the occupant holds in good faith under color of title the owner can recover the land and mesne profits for three years, and the occupant can recover the value of his improvements and amount of taxes.' "

"These are the rights of the parties as fixed by this statute. The statute says that the owner shall be allowed the rents of the lands that shall have accrued within three years next before the commencement of the suit. It deprives the true owner of all the mesne profits that accrued prior to that time, but it gives to him the rents on the lands in the exact condition in which they are for the period subsequent to three years next before the commencement of the suit."

We therefore affirm as modified and remand for further proceedings consistent with this opinion.

McFADDIN, J., concurs.

ROBINSON, J., dissents.

ED. F. McFADDIN, Associate Justice (concurring). I concur in the result reached by the majority, but I am dubious concerning the authority cited for the modification. The majority says that Young is entitled to recover rent for only three years next before the filing of the suit because of § 34-1424 *et seq.,* Ark. Stats., known as the "Betterment Act." I have never considered the Betterment Act to be applicable in an accounting between co-tenants, or between those standing in such a relationship as appellant and appellee occupied in the case at bar.

My reason for limiting Young to rent for only three years is because Young's suit is like any other action to recover rents, and is governed by the 3-year statute of

limitations, which is § 37-206, Ark. Stats. In 54 C. J. S. 37, "Limitation of Actions," § 124, the text states that the general principle—that limitations begins to run when a complete cause of action accrues—has been applied to proceedings for accounting; and in Footnote 8 the text lists cases from Georgia and Illinois as applying this rule of limitations to accounting between co-tenants. These Georgia and Illinois cases support the text: *George* v. *Bullard,* 173 S. E. 920; *Chambers* v. *Schall,* 70 S. E. 2d 463; *Brown* v. *Brown,* 75 S. E. 2d 13; and *Fyffe* v. *Fyffe,* 11 N. E. 2d 857.

Because of my doubt as to the applicability of the Betterment Act, I am compelled to concur; since I think the applicable statute is the rent statute, which is § 37-206, Ark. Stats.