SMITH *v.* NELSON

5-3910                                    403 S. W. 2d 99

Opinion delivered May 30, 1966

*George Howard, Jr.,* for appellant.

*Thomas D. Wynne, Jr.* and *Frank W. Wynne,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Edgar Smith, Louis Smith, Joe Smith, Elijah Smith, and Lillie Taylor, along with Ardellar Smith Nelson, one of the appellees herein, are heirs at law of Ella Smith, deceased, who died intestate in Dallas County, Arkansas, the owner of 160 acres of land. This land has never been partitioned.

In July, 1961, these appellants, and Ardellar Smith Nelson, entered into an agreement to partition this tract of land, it being agreed that appellants would convey all

of their interest in a particular 16 acres (of the tract) to Ardellar Smith Nelson, and she, in turn, would convey her interest in the remaining 144 acres to appellants. An attorney was engaged to prepare proper deeds to carry the agreement into effect. However, some of the heirs withdrew their consent to the agreement[1], and it was called off. The attorney then returned the deed (wherein appellants would deed their interest to Ardellar Smith Nelson) to Edgar Smith, and instructed him to destroy the instrument. However, Smith did not destroy it, but, several weeks later, turned it over to Roscoe Utter, who, together with his wife is the other appellee herein. This deed, dated July 22, 1961, was recorded by Utter on November 6, 1962. In the meantime, on October 24, 1962, Utter and wife had acquired a deed from Ardellar Smith Nelson, in which she conveyed all of her right, title and undivided interest in and to the 160-acre tract of land, and this deed was recorded on October 30, 1962. On January 12, 1963, Utter recorded a deed from Ardellar Smith Nelson, executed on January 11, 1962, wherein the latter conveyed all of her title and undivided interest in and to the specific 16 acres heretofore mentioned. Thereafter, Utter and wife proceeded to place various improvements on the 16 acres mentioned in the unexecuted deed, signed by appellants (or some of them), and set out in the January deed from Ardellar Smith Nelson.[2] Appellants, upon discovering that the instrument turned over to Edgar Smith had been recorded by Utter, instituted suit to cancel the deeds of July 22, 1961, and January 11, 1962, alleging that Utter had fraudulently caused the July deed to be placed of record, and that the January deed referred to the July deed, and thus improperly designated the interest of appellants in the land. On trial, the court cancelled the deed of July 22, 1961 (wherein appellants purportedly conveyed their interest in the 16 acres to Ardellar Smith Nelson), and also cancelled the deed of January 11, 1962, from Ardellar Smith Nelson to the Utters.

---

[1]It is not entirely clear whether some of the heirs refused to sign the deed, or whether they changed their minds after signing.

[2]This particular acreage adjoined land owned by Utter.

The court held that Utter and wife acquired an undivided 1/10 interest in the 160-acre tract of land, by virtue of the deed executed by Ardellar Smith Nelson to them on October 22, 1962, and that accordingly, the Utters likewise held a 1/10 interest in the 16-acre tract, heretofore mentioned. The court found that the Utters had expended the sum of $2,485.36 in improvements on the 16 acres, and held that they were entitled to that amount less $248.53, which represented their own 1/10 interest. Judgment was rendered against each appellant for $248.53 as their pro rata part of the amount expended for improvements, based on the 1/10 interest of each[2]. Appellants appeal from that portion of the decree, which finds that no fraud was perpetrated by the Utters, and that portion which awards the Utters $2,236.83 for improvements.

The only issues to be decided are whether appellees were entitled to be reimbursed for improvements, and, if so, whether the proper amount was awarded; all other relief sought by appellants was granted in the trial court, and there is no cross-appeal. It is appellants' contention that Utter practiced fraud on the appellants, and was not entitled to invoke the aid of a court of equity. The testimony of how Utter acquired the deed (signed by appellants) is in conflict, and no point would be served by setting out all of the testimony. Admittedly, he paid $1,800.00 to Ardellar Smith Nelson for her interest, and there is no suggestion that this amount was inadequate; there is evidence that he thought he was purchasing the exact 16 acres adjoining his property, and, unquestionably, that was Utter's intention. At any rate there was sufficient testimony to support the finding of the Chancellor that no fraud was committed. It is admitted by appellant Edgar Smith that Utter "was supposed to have got 16 acres" from Ardellar Smith Nelson; likewise, Elijah Smith testified that he understood that Utter had purchased 16 acres from Ardellar Smith Nelson, and both witnesses admittedly observed Utter making

---

[2]There are other heirs who are not participants in this litigation.

improvements on the property. When asked why he did not try to stop Utter at that time, Elijah Smith replied, "Here is what I thought. Roscoe bought her part and he had a right to put improvements on it." Edgar Smith also observed the improvements being made by Utter, and, in fact, Smith testified, "I went down there and showed him the corners." Appellants clearly were originally of the view that Utter was within his rights in placing improvements on this particular 16 acres, and all appellants were aware of the fact that Ardellar Smith Nelson had conveyed her interest in the land to this appellee and his wife. No objection was made to the improvements being placed on the property at the time the work was being done, though the work was performed openly, and, as previously mentioned, at least two of the appellants, Edgar and Elijah Smith, were well aware of the fact that the improvements were being made[4]. Under these facts, we think the Chancellor was correct in concluding that Utter was entitled to be reimbursed for the improvements made. However, the court erred in determining the amount that Utter should receive, basing its finding on the amount that Utter had spent in making the improvements; this was not the proper method to be used in establishing the value. As we stated in *Wallis* v. *McGuire,* 234 Ark. 491, 352 S. W. 2d 940:

"* * * The proper criterion is not the cost—nor present value—of the improvements, but rather, the amount by which such improvements have enhanced the value of the land. This is the rule under what is generally known as the Betterment Act, § 34-1423. Ark. Stats., 1947. See *Hutchinson* v. *Sheppard,* 226 Ark. 509, 290 S. W. 2d 843; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88. In the latter case we said:

" 'The value thereof is based upon the enhanced value which these improvements at the time of the re-

---

[4]It was stipulated that Joe Smith and Louis Smith, if called to testify, would testify to substantially the same facts as testified to by Edgar and Elijah Smith.

covery impart to the land. * * * The difference between the value of the land without the improvements and the value of the land with the improvements in their then condition would be a just sum to allow therefor.'

''The Betterment Act applies to tenants in common. *Greer* v. *Fontaine,* 71 Ark. 605, 77 S. W. 56; *Baxter* v. *Young,* 229 Ark. 1035, 320 S. W. 2d 640. Practically all of appellants' testimony deals with the costs of the improvements, * * *. The cost of an improvement is only an element to consider in the overall picture.''

Because of the court's error in determining the amount to be allowed for improvements, that portion of the decree is reversed, and the cause remanded with directions to proceed in a manner not inconsistent with this opinion. In all other respects, the decree is affirmed.

McFADDIN, J., not participating.