Harriet BOYD *v.* Mary Ann MEADOR and
Vivian Hope WINGO

CA 83-63                                    660 S.W.2d 943

Court of Appeals of Arkansas
Division I
Opinion delivered November 16, 1983

6

*Ross & Ross, P.A.,* by: *Joseph Ross,* for appellant.

*Gordon & Gordon, P.A.,* by: *Allen Gordon,* for appellees.

GEORGE K. CRACRAFT, Judge. Harriett Boyd appeals from a decree of the Chancery Court of Conway County which dismissed her petition to set aside a tax title to a 20 acre tract of land and quieted title to that same tract in Vivian Hope Wingo, contending that the chancellor erred in his application of the law to the facts disclosed in the record. We agree.

It was shown that the title to the property in question had been in appellant's family for over sixty years and that she had acquired an undivided one-fourth interest in it by inheritance more than thirty years ago. As she and her tenants in common were all non-residents of this State and rarely returned to it, they let their uncle E. C. Vaughn "work" the lands in exchange for his "looking out for it" for them. The appellant failed to pay the real estate taxes assessed on the land for 1970 and it was forfeited, sold and certified to the State. It was stipulated that the clerk had failed to make a certificate of publication and notice of the sale as required by Ark. Stat. Ann. § 84-1102 (Repl. 1980), but there were admitted into evidence copies of a Conway County newspaper showing that the notice had actually been published for the times and in the manner required by law.

The State conveyed its tax title to Mary Ann Meador in 1974. In 1976 Meador brought an action and on May 27, 1977 obtained a decree from the Chancery Court of Conway County quieting her title to the land. Although the appellant was named a defendant in that action the court specifically found that she had not been actually or con-

structively served with notice and was not bound by it. There was no evidence that she was ever made aware of the entry of that decree.

In 1980 Mary Ann Meador conveyed her interest in the property to the appellee, Vivian Hope Wingo, who entered into possession of the lands under that deed under the circumstances outlined in this opinion.

It is clear from the record that between 1974 and 1980 the only acts of actual possession exercised over the property were those of appellant's uncle E. C. Vaughn. Vaughn testified that for several years he had planted row crops on the land but later converted it into a meadow from which he cut hay through the fall of 1979. He testified that during that winter he went on the land and discovered someone claiming under Vivian Hope Wingo had planted a grain crop on the property and he therefore did not return in 1980. There was evidence from another witness supporting both Vaughn's testimony as to his activities on the land and Vaughn's statement that prior to the entry of Wingo's tenant he had not been interfered with. It was shown that shortly after the State's deed was issued Mary Ann Meador notified Vaughn that she had purchased a title to the property from the State and Vaughn had informed the appellant of that fact. The appellant testified that she had consulted an attorney and been advised that no action was required of her until her possession was actually interfered with.

Mary Ann Meador testified that shortly after her purchase of the State's title she went on the land, staked the corners and assumed that this constituted possession. She stated that during this period she also advised Vaughn of her purchase and informed him that her father would thereafter be in charge of the land. However, there is no evidence that Mary Ann Meador's father did interfere with Vaughn. Mary Ann Meador was also a non-resident who rarely returned to this State and, even though she paid taxes on it for the next six years, she denied any knowledge of the activities of Vaughn on the property.

It was stipulated and the chancellor specifically found that the clerk's certificate of publication of the notice and

sale of delinquent lands was never recorded as required by Ark. Stat. Ann. § 84-1102 (Repl. 1980). But he concluded that this was an irregularity which was barred under Ark. Stat. Ann. § 84-1118 (Repl. 1980) because the objection had not been raised within two years. He further concluded that this omission was not one which would invalidate the sale "since there was proof that the required notice was actually published." We do not address the arguments of counsel as to whether appellant's continued possession tolled the two year limitation contained in § 84-1118 because that section has no application to the defect here and extrinsic evidence of publication of the notice was not admissible to cure the defect. Section 84-1118 is as follows:

> Action to test validity of proceedings — Limitation. — All actions to test the validity of any proceeding in the appraisement, assessment, or levying of taxes upon any land or lot, or part thereof, and all proceedings, whereby is sought to be shown any irregularity of any officer, or defect or neglect thereof, having any duty to perform, under the provisions of this act, in the assessment, appraisement, levying of taxes, or in the sale of lands or lots delinquent for taxes, or proceedings whereby it is sought to avoid any sale under the provisions of this act, or irregularity or neglect of any kind by any officer having any duty or thing to perform under the provisions of this act, shall be commenced within two [2] years from the date of sale, and not afterward.

In a long line of cases collected in *Johnson* v. *Johnson,* 207 Ark. 1015, 183 S.W.2d 783 (1944) the Supreme Court has declared that this section deals only with *irregularities* of public officials in the performance of their statutory duties but has no application where the sale is *invalid* as a result of so substantial a defect as the omission of the required certification of the publication of notice of sale.

In *Cecil* v. *Tisher,* 206 Ark. 962, 178 S.W.2d 655 (1944) the court declared that the failure of the clerk to attach the certification of publication to the list of delinquent land is an invalidating omission which was neither subject to the

limitation of § 84-1118 nor curable by extrinsic evidence that the notice was in fact published. There the court stated:

> In *Hurst* v. *Munson*, 152 Ark. 313, 238 S.W. 42, this court said: 'The attack of appellees and their predecessors in the action on the validity of the tax sale is based, among other things, on the ground that the clerk's certificate of the publication of the list of delinquent lands was not recorded as required by statute (Crawford & Moses' Digest, § 10085, now § 13848 of Pope's Digest [now Ark. Stat. Ann. § 84-1102]) before the day of sale. . . . This court has decided that the certificate required by the statute cited above must be placed of record prior to the day of sale, otherwise the sale is invalid. *Logan* v. *Eastern Arkansas Land Co.*, 68 Ark. 248, 57 S.W. 798; *Hunt* v. *Gardner*, 74 Ark. 583, 86 S.W. 426. *We have also held that the clerk's certificate thus recorded is the sole evidence of the publication of the list. Hunt* v. *Gardner, supra; Cook* v. *Ziff Colored Masonic Lodge*, 80 Ark. 31, 96 S.W. 618. *The record being the sole evidence, the facts cannot be proved by evidence aliunde.*'

> . . . .

> Appellant next argues that the suits of appellees were barred by the statute of limitation, as provided in § 13883 of Pope's Digest [now Ark. Stat. Ann. § 84-1118]. We think this contention is untenable. In construing § 7114 of Kirby's Digest, which is now § 13883 of Pope's Digest, this court, in the case of *Hewitt* v. *Ozark White Lime Co., supra,* held that the failure of the clerk to make the certificate as to the publication of delinquent lands *is fatal to the validity of the tax sale and that the defect is not cured by the two years statute of limitation, . . .* . (Emphasis supplied)

We conclude that the chancellor erred in declaring that the tax sale was valid and that appellant's right to question it was barred.

Nor are the provisions of Ark. Stat. Ann. § 34-1419 (Repl. 1962) (formerly found in Pope's Digest § 8925)

available to the appellee. This section, in essence, shortens the period of limitation for the recovery of lands adversely possessed under deeds based on tax sales to two years. Two years actual adverse possession by the holder of the tax deed is required before the original owner's right to recover the land is barred. *Cecil* v. *Tisher, supra.* The period of limitation begins to run, not from the date of the tax deed, but from the date actual possession is taken under it. *Sims* v. *Petree,* 206 Ark. 1023, 178 S.W.2d 1016 (1944); *Hoch* v. *Ratliff,* 216 Ark. 357, 226 S.W.2d 39 (1950).

The court further found that appellant had "actual knowledge of Mary Ann Meador's claim of ownership in the property prior to 1980 but took no action to assert her claim of title." He concluded that this failure barred appellant's claim by laches and estoppel.

The record discloses that the only act of possession exercised by Mary Ann Meador was the placing of stakes in the corners in 1974. There was no evidence that she ever did anything else with the property or that she had made any improvements on it. To the contrary the evidence discloses that whatever possession was maintained was through appellant's tenant Vaughn. It was undisputed that Vaughn was made aware of the tax title shortly after it was executed and that he notified the appellant of that fact. There was no evidence that Vaughn's activities were interfered with by anyone until Wingo planted the grain crop. If the activities of Vaughn did not constitute possession, at least constructive possession was in appellant who had the legal title. *Jackson* v. *Boyd,* 75 Ark. 194, 87 S.W. 126 (1905); *Union Sawmill* v. *Pagan,* 175 Ark. 559, 299 S.W. 1012 (1927); *Garrison* v. *Southern Enterprises,* 245 Ark. 927, 436 S.W.2d 278 (1969).

. The mere fact that appellant was aware of appellee's claim of ownership does not require that she take action on it. Until there was an interference with her actual or constructive possession there was no occasion for action on her part and the payment of taxes by another for the period of time involved here is not sufficient of itself to call for that action. *Jackson* v. *Boyd, supra; Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296, 99 S.W. 84 (1907); *Carmical* v.

*Arkansas Lumber Co.,* 105 Ark. 663, 152 S.W. 286 (1912); *Bradley Lumber Co.* v. *Langford,* 109 Ark. 594, 160 S.W. 866 (1913). Where there is no intervening equity which of itself requires application of the doctrine of laches the owner will not be divested of his title to land unless he fails to assert such title for a period at least equal to that fixed by the Statute of Limitations. *Walker* v. *Ellis,* 212 Ark. 498, 207 S.W.2d 39 (1947). Mere laches does not of itself bar a plaintiff. Laches in legal significance is not mere delay, but delay that works a disadvantage to another. Before the doctrine of laches can be invoked, the delay of the true owner to take action must mislead and work a disadvantage to the other party in making his claim. *Carmical* v. *Arkansas Lumber Co., supra.* From our *de novo* review of the record we find no evidence of conduct on the part of the appellant which would bar her claim under the doctrines of laches and estoppel. This case is reversed and remanded with directions that a decree be entered not inconsistent with this opinion.

GLAZE and COOPER, JJ., agree.